IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| WALTER MCNAIR, JR., #213151, | Civil Action No. 3:08-3277-HFF-JRM |
| Plaintiff, | |
| vs. | **ORDER** |
| ANNIE SELLARS; | **AND** |
| SGT. THOMAS; | |
| SGT. GADDY; | **REPORT AND RECOMMENDATION** |
| WILLIE EAGLETON; AND | |
| JIMMY SIMMONS, | |
| Defendants | |

Plaintiff filed this action, pro se, in the Court of Common Pleas of Marlboro County, South

Carolina.  Defendant removed this action to this court on September 26, 2008.[1]  At the time of the

alleged incidents, Plaintiff was an inmate at the Evans Correctional Institution ("ECI") of the South

Carolina Department of Corrections ("SCDC").  He is currently an inmate at the Lieber Correctional

Institution of the SCDC.  On November 12, 2008, Plaintiff filed an amended complaint.  Defendants

filed a motion for summary judgment on January 26, 2009.  Because Plaintiff is proceeding pro se,

he was advised on January 27, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975),

that a failure to respond to Defendants' motion for summary judgment with additional evidence or

counter-affidavits could result in the dismissal of his complaint.  The undersigned filed a second

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC.  Because these are dispositive motions, this report and recommendation is entered for review by the court.

order on May 19, 2009, allowing Plaintiff an additional fifteen days in which to advise the Court whether he wished to continue to prosecute this action.   Plaintiff did not file a response.[2]

## DISCUSSION

Plaintiff's allegations appear to concern a use of force incident that occurred on April 23, 2007, and a disciplinary hearing on charges stemming from that incident.  Plaintiff claims that Defendants Sgt. Gaddy used excessive force against him by spraying him with chemical munitions[3] and Sgt. Thomas violated his civil rights by failing to intervene.  He alleges that Defendant Annie Sellars ("Sellars"), a disciplinary hearing officer, was biased against him during his disciplinary hearing.  Plaintiff claims that Sellars later altered the cassette tape of the disciplinary  hearing. Additionally, Plaintiff alleges that Defendant Warden Eagleton and Defendant Jimmy Simmons (who works at SCDC Headquarters), failed to perform certain acts while reviewing the appeal of Plaintiff's disciplinary action.  Plaintiff requests monetary damages.  Amended Complaint, at 1.  Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to state a claim upon which relief can be granted; (2) Defendants are entitled to qualified immunity; (3) Defendants are entitled to Eleventh Amendment immunity; (3) Defendants are entitled to the defenses available to them pursuant to the South Carolina Tort Claims Act; (4) the alleged actions/inactions claimed by

---

[2]The undersigned has addressed Plaintiff's claims on the merits.  Alternatively, it is recommended that Plaintiff's claims be dismissed pursuant to Rule 41(b), Fed. R. Civ. P., for failure to prosecute.

[3]Gaddy claims that chemical munitions were used after Plaintiff flooded his cell by repeatedly flushing his toilet and refused Gaddy's orders to stop.  See Gaddy Aff.

2

Plaintiff did not rise to the level of a constitutional violation; and (5) Defendants are entitled to summary judgment on any of Plaintiff's claims construed as state claims.[4]

1.     **Disciplinary Hearing**

Plaintiff appears to allege that he was denied due process because Defendant Sellars was biased against him during his disciplinary hearing and altered the hearing tape. Defendants deny any negligence or wrongdoing as to the disciplinary hearing and argue that any concerns are moot as the hearing was overturned and Plaintiff's good-time credits were restored. They also contend that Plaintiff fails to state a claim as he fails to show any bias and offers no proof that Sellars altered the hearing tapes.

An inmate's rights at prison disciplinary hearings are defined by the Due Process Clause of the Fourteenth Amendment. See Wolff v. McDonnell, 418 U.S. 539, 568-69 (1974). The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. See Board of Regents v. Roth, 408 U.S. 564, 570 (1972). Thus, the first step in analyzing a procedural due process claim is identifying whether the alleged deprivation impacts such a protected interest. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir.1997); Mallette v. County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 634 (4th Cir.1996). Here, Plaintiff fails to show that the alleged incidents impact any of his protected interests as he admits that the good-time credits

_____

[4]Defendants Eagleton and Simmons also appear to argue that they cannot be held liable on a theory of supervisory liability. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

taken from him (after he was convicted of the disciplinary infraction) have been restored.  Thus, any protected interest Plaintiff had in his good-time credits is now moot.

Further, Plaintiff fails to show that his due process rights were violated as to his disciplinary hearing.  When the Due Process Clause applies, a prisoner is entitled to only a minimal standard of due process in the prison disciplinary setting.  The following requirements are sufficient to satisfy this minimal standard of due process in the prison setting:

1.     Advance written notice of the charges;

2.     A written statement by the committee, citing the evidence on which they relied and the reasons for the action taken; and

3.     The right by the inmate/defendant to call witnesses and present documentary evidence, if institutional safety will not be jeopardized.

Wolff v. McDonnell, 418 U.S. at 563-576 (1974).  Plaintiff does not dispute that he received the above.

Plaintiff claims that Sellars was biased at his disciplinary hearing.  He fails, however, to provide any evidence to show that Sellars was biased and/or that her bias affected the outcome of his disciplinary hearing. Plaintiff also fails to show that he has a constitutional right to a copy of the cassette tapes from his disciplinary hearing.  Inmates are entitled to a written statement of the disposition and evidence relied on, not to audio recordings of the hearing. See Wolff, 418 U.S. at 564-65.

## 2.     **Excessive Force**

Plaintiff appears to allege that he was subjected to excessive force because Sgt. Gaddy sprayed him with chemical munitions and Sgt. Thomas failed to intervene.   Defendants contend that Plaintiff fails to establish a constitutional claim because he has not shown anything more than de minimis injury, the force used was appropriate because Plaintiff was flooding his cell and refused

4

Gaddy's direct orders to stop, and Thomas had no duty to intervene when he saw a fellow officer appropriately using chemical munitions on a non-compliant inmate.

Determination of whether cruel and unusual punishment has been inflicted on a prisoner in violation of the Eighth Amendment requires analysis of subjective and objective components. See Wilson v. Seiter, 501 U.S. 294, 302 (1991). First, the objective portion of an excessive force claim requires a prisoner to show that the injury inflicted was sufficiently serious. Although a plaintiff need not show a significant injury, see Hudson v. McMillian, 503 U.S. 1, 7 (1992), the Fourth Circuit, in Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Norman v. Taylor, 25 F.3d at 1263. Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis. See id. at 1262-63. With only de minimis physical injury, a prisoner may only recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." Id. at 1263 n. 4. The Fourth Circuit has explained:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in the impermissible infliction of pain. In these circumstances, we believe that either the force will be "of a sort repugnant to the conscience of mankind," and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Id. at 1263, n. 4.

Plaintiff fails to establish an Eighth Amendment claim because he has shown no more than de minimis injury. Sgt. Gaddy's use of force report indicates that the medical department was notified after the use of force incident and Plaintiff was examined. Plaintiff's medical records

5

(attached to Defendants' motion for summary judgment) reveal that Plaintiff was examined and no acute distress was noted.  Thus, any use of force by Defendants was de minimis.  See, e.g., Norman, 25 F.3d at 1262-64 (keys swung at inmate's face which struck his thumb was de minimis force); Gavin v. Ammons, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994)[Table](guard's pulling of inmate's hair was de minimis force); Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994)[Table](radio belt thrown at face of inmate causing blood to appear was de minimis force); White v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994)(keys swung at inmate which slashed his ear was de minimis force); Jackson v. Pitcher, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992)[Table](guard's stomp on the hand of inmate was de minimis force), cert. denied, 506 U.S. 1024; Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order of the inmate out of his cell and poking inmate in the back was de minimis force); see also Roberts v. Samardvich, 909 F. Supp. 594 (N.D.Ind. 1995)(grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was de minimis force under the circumstances); McMiller v. Wolf, 1995 WL 529620 (W.D.N.Y. August 28, 1995)(snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was de minimis force); Crow v. Leach, 1995 WL 456357 (N.D.Cal. July 28, 1995)(corrections officer's pushing inmate into chair causing his shoulder to break window behind him was de minimis force); Jackson v. Hurley, 1993 WL 515688 (N.D.Cal. November 23, 1993)(blow to back of neck with forearm and kick to the ankle of inmate were de minimis force); DeArmas v. Jaycox, 1993 WL 37501 (S.D.N.Y. February 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993)(corrections officer's punching inmate in arm and kicking inmate in leg was de minimis force); Olson v. Coleman, 804 F. Supp. 148, 150 (D. Kan. 1992)(single blow to head of handcuffed inmate was de minimis force); Candelaria v. Coughlin, 787 F. Supp. 368, 374-75

(S.D.N.Y. 1992)(fist pushed against neck of inmate causing him to lose his breath was de minimis force), aff'd, 979 F.2d 845 (2d Cir. 1992)[Table]; Neal v. Miller, 778 F. Supp. 378, 384 (W.D.Mich. 1991)(backhand blow with fist to the groin of inmate was de minimis force); Ramos v. Hicks, 1988 WL 80176 (S.D.N.Y. July 25, 1988)("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); Anderson v. Sullivan, 702 F. Supp. 424, 426 (S.D.N.Y. 1988)(corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was de minimis force).

Even if Plaintiff could show that his injuries were more than de minimis, he fails to establish the subjective component of his excessive force case.  Appropriate force may be used by prison officials when it is intended to maintain discipline within a prison institution or to restore order.  See Hudson, 503 U.S. at 6; Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  When an inmate claims prison officials used excessive force "he is forced to meet a higher standard (than deliberate indifference) to establish the subjective component."  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).  The subjective portion of an excessive force claim requires a prisoner to demonstrate that officials inflicted force sadistically and maliciously for the sole purpose of causing harm.  See Whitley, 475 U.S. at 320-21; Williams v. Benjamin, 77 F.3d at 761.  The Supreme Court has directed that several factors should be balanced in determining whether prison officers acted maliciously and sadistically.  These factors, originally set out in Whitley, include:

(1) the need for the application of force,

(2) the relationship between that need and the amount of force used,

(3) the threat "reasonably perceived by the responsible officials," and

(4) "any efforts made to temper the severity of a forceful response."

<u>Hudson</u>, 503 U.S. at 7 (citations omitted); <u>see also</u> <u>Williams v. Benjamin</u>, 77 F.3d at 762.  The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis.  <u>Hudson</u>, 503 U.S. at 7.

Plaintiff fails to establish the subjective component of his excessive force claim.  Force was necessary to gain control of Plaintiff.  Sgt. Gaddy states that he gave Plaintiff a directive to cease repeatedly flushing his toilet and flooding his cell, but Plaintiff refused to comply.  Gaddy Aff., Para. Gaddy's actions in using chemical munitions appear to be an appropriate use of force because of the need to gain control over Plaintiff.  <u>See</u> Incident Report and Gaddy Aff.  There was a threat reasonably perceived by Defendants because Plaintiff disobeyed Gaddy's order.  As discussed above, there is no indication that Plaintiff suffered anything more than de minimis injury from the incident. Finally, Defendants' actions appear to have been a good-faith effort to restore order.

### 3.    <u>Immunity</u>

Defendants contend that they are entitled to Eleventh Amendment immunity.  When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.  In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The

> Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

9

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

### 4.     State Law Claims

Plaintiff may also be attempting to assert claims under South Carolina law. Any such claims are based on state law and premised on supplemental jurisdiction. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims would remain. It is recommended that discretion be exercised pursuant to 28 U.S.C. § 1367(c)(3) and that any remaining state law claims be remanded to the State court. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988); and Hinson v. Norwest Fin. SC, Inc., 239 F.3d 611 (4th Cir. 2001)

## MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

On October 17, 2008, Plaintiff filed a motion for a temporary restraining order ("TRO") and preliminary injunction. He requests that the Court order that the cassette tapes from his September 11, 2006 and May 7, 2007 disciplinary hearings not be destroyed. Plaintiff filed another motion for a TRO and preliminary injunction on January 23, 2009, in which he again requests that the hearing tapes not be destroyed. Defendants did not file a response to Plaintiff's motions.

The undersigned construes these as motions for preliminary injunctive relief. The court is required to consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a)  plaintiff's likelihood of success in the underlying dispute between the parties;

10

(b) whether plaintiff will suffer irreparable injury if the interim relief is denied;

(c) the injury to defendant if an injunction is issued; and

(d) the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997); Hughes Network Sys., Inc. v. InterDigital Commc'n Corp., 17 F.3d 691, 693 (4th Cir. 1994); North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979); and Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir. 1977). The two most important factors are probable irreparable injury to a plaintiff if the relief is not granted and the likelihood of harm to a defendant if the injunction is granted. Manning, 119 F.3d at 263; North Carolina State Ports Auth., 592 F.2d at 750.

A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

As discussed above, it is unlikely that Plaintiff will be successful on his underlying claims. He is unlikely to suffer irreparable injury if interim relief is denied, as his disciplinary conviction was overturned and his good-time credits were restored. Thus, it is recommended that his motions for a TRO and preliminary injunction be denied.

### MOTION FOR A HEARING

On January 23, 2009, Plaintiff filed a motion requesting that the Court hold a hearing, listen to the cassette tapes from his May 7, 2007 disciplinary hearing, and determine whether Plaintiff is

11

entitled to the tapes and/or a transcribed copy of the tapes.  He appears to argue entitlement to the

tapes because South Carolina law provides that, in an appeal of a disciplinary hearing conviction to

the South Carolina Administrative Law Court, the record should include a copy of pertinent portions

of the disciplinary hearing or a transcribed record of the hearing.  As discussed above, Plaintiff's

request is moot, as his disciplinary conviction was overturned and his good-time credits have been

restored.  Plaintiff's motion for a hearing is, therefore, denied.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary

judgment (Doc. 29) be **granted** and that Plaintiff's motions for a TRO and preliminary injunction

(Docs. 7 and 26) be **denied**.  **IT IS ORDERED** that Plaintiff's motion for a hearing (Doc. 27) is

**denied**.

Joseph R. McCrorey
United States Magistrate Judge

June 17, 2009
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

12

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

13